A. L. OSTRANDER, Appellee, v. HARRY D. LINN, Secretary of Agriculture of State of Iowa, Appellant.

No. 46724.

MARCH 5, 1946.

REHEARING DENIED JUNE 21, 1946.

John M. Rankin, Attorney General, Robert L. Larson, Assistant Attorney General, and Booker Smith, County Attorney, for appellant.

W. R. Fimmen, of Bloomfield, and Thoma & Thoma, of Fairfield, for appellee.

MILLER, J.—The record in this case was abbreviated, pursuant to stipulation of the parties, because of the fact that only a portion of the controversy which was before the trial court is involved in the appeal.

Plaintiff's petition in equity asserted: Plaintiff is engaged in the business of buying cream in Batavia, Iowa; defendant

is the Secretary of Agriculture of the State of Iowa; plaintiff has a license to operate a cream station; on June 11, 1943, an inspector for the State Department of Agriculture filed an information before a justice of the peace in Jefferson County, Iowa, charging plaintiff herein with operating his cream station without posting the price differential for various grades of cream as provided by sections 3100.23, 3100.24, and 3100.25, Code, 1939[1]; plaintiff's purchases of cream were not for butter-making purposes but were exclusively for sale in the state of Illinois in the regular course of interstate commerce; accordingly, plaintiff does not maintain a price differential, pays only the first-grade price for cream, and does not post any differential in price paid; plaintiff expects to continue to purchase cream for resale on the same basis in interstate commerce; plaintiff's operations do not come within the contemplation of sections 3100.23, 3100.24, 3100.25, Code, 1939, and do not violate said statutes; defendant and his predecessor in office have, at divers times, filed separate informations against plaintiff, similar to the one now pending, and defendant threatens to continue to file others, knowing that plaintiff's operations do not violate said statutes, and will subject plaintiff to unfair, wrongful, harassing, oppressive, arbitrary acts; it is necessary and proper that there be a determination of the construction of said statutes, the proper application thereof to plaintiff's business, a declaration by the court of plaintiff's rights, status, and legal relation thereunder. The prayer was for an injunction against defendant, his agents, representatives, or inspectors, from interfering with plaintiff's business and requiring the posting of price differentials, etc.; that the court decree plaintiff's rights, status, and legal relations with defendant as affected by said sections 3100.23, 3100.24, and 3100.25, and for general equitable relief.

[1]Such statutes are as follows:
3100.23 Basis of purchase. All purchases of cream for butter-making purposes shall be made on the basis of sweet cream, first grade cream and second grade cream.
3100.24 Price differential. Every person owning or operating a creamery, or cream station, or cream vehicle route and engaged in the business of buying two or more grades of cream shall maintain a price differential between said grades of not less than one cent per pound of butterfat.
3100.25 Posting. Said differential and the price paid for the various grades of cream purchased, shall be continuously posted in a conspicuous place in each creamery, cream station and vehicle used in transporting purchased cream, controlled or managed by the party so purchasing.

The answer admitted the identity of the parties, that plaintiff operated a cream station, and the pendency of the criminal proceedings before the justice of the peace, but denied all other allegations of the petition and prayed that the petition be dismissed.

The cause came on for trial May 9, 1944, and resulted in the entry of a decree on November 29, 1944. The record indicates that considerable evidence was introduced but none of it is before us. Aside from the petition and the answer, the only other parts of the record presented to us are the trial court's opinion, findings of fact, conclusions of law, decree, and the proceedings incident to perfecting the appeal and settling the record. This situation is accounted for by the fact that in this court the only assignment of error relates to the power of the court to enter a declaratory judgment. In this respect, certain matters appear to have been presented to the trial court which we must here assume without specific record to sustain our position.

While the record indicates that a temporary injunction was issued June 24, 1943 (prior to the effective date of our Rules of Civil Procedure), trial was had in accordance with said Rules. The trial court was warranted in applying the Rules of Civil Procedure to this action under the provisions of Rule 1(b) even if it was pending before July 4, 1943. We assume that if any steps were necessary below in that regard they were taken. Hence we consider the case as though it were commenced after July 4, 1943. The trial court's opinion recites that defendant contended that, under the evidence and the allegations of the petition, the case was not one wherein a declaratory judgment should be entered, and further that, if it was one in which it would be proper, such decree is not proper herein because of the pendency of the case in justice-of-the-peace court, which was instituted prior to the commencement of this case. This contention is not predicated on the fact that this action was pending July 4, 1943, but under the theory that even though the Rules of Civil Procedure applied herein the entry of such a decree was not proper.

The trial court found the following facts: The institution of criminal prosecutions against plaintiff was not an unlaw-

ful abuse of authority; a license was issued to plaintiff to operate a cream station and has not been revoked; plaintiff has bought no cream for any purpose except to resell as cream, and all but eight lots were resold outside of Iowa; plaintiff bought cream on only one grade basis and paid current first-grade price for it. Pursuant to such facts, the court made the following conclusions of law: Plaintiff is not entitled to an injunction, but such ruling shall not prejudice the effect of the court's declaratory judgment upon the criminal proceedings and shall be without prejudice to a future application for an injunction based upon such declaratory judgment; plaintiff is the holder of a cream-station license and a "Babcock Test license"; sections 3100.23, 3100.24, and 3100.25 are not applicable to cream purchased by plaintiff for resale as cream wherever said resale is made. Pursuant to the foregoing, decree was entered denying an injunction without prejudice as aforesaid and determining plaintiff's rights, status, and legal relations to defendant under sections 3100.23, 3100.24, 3100.25, Code, 1939.

Defendant has appealed to this court but he does not here challenge the trial court's findings of fact or conclusions of law or the provisions of the declaratory judgment except as they pertain to the narrow contention that the court abused its discretion in entertaining jurisdiction to enter a declaratory judgment during the pendency of the criminal action before the justice of the peace, which was commenced before this action. Before considering the decisive question presented by this appeal, certain preliminary questions should be disposed of.

I. Although not a controverted proposition in this case, it may well be noted that generally the courts have held that declaratory-judgment procedure may be employed to challenge police-power statutes of the nature of those here involved which forbid or require certain practices and provide penalties for noncompliance. See annotation in 129 A. L. R. 751; 52 Yale L. J. 445; 16 Am. Jur. (Cumulative Supp.), Declaratory Judgments, section 28.1. Pursuant to such decisions we hold that declaratory-judgment procedure was proper herein to determine plaintiff's rights, status, and legal relations with

defendant under sections 3100.23, 3100.24, 3100.25, Code, 1939.

■ II. Plaintiff contends that there was a lack of identity between the parties in the criminal action and this action. We disagree. The petition herein alleges that the criminal action was instituted by defendant, as head of the Department of Agriculture, through one of his inspectors. Defendant concedes that this is correct. The action is here brought against defendant as a representative of the state. Realistically, the controversy in each instance is between the plaintiff herein and the Department of Agriculture.

■ III. The trial court stated in its opinion that the issues in the criminal case were not the same as those presented herein, stating as follows:

"In the criminal action in the Justice of the Peace Court the only charge is the failure to post the price differential. Under the statute it is not required to post a price differential unless such a price differential is maintained on the various grades of cream, and a price differential on various grades of cream is not required to be maintained unless the cream buyer is buying on the basis of two or more grades. Therefore, it would appear that the identical issues are not involved in both of the cases."

We cannot agree. The basis for declaratory-judgment relief herein would be the basis for the defense in the criminal action.

IV. Plaintiff contends that the proposition here asserted was not raised by defendant in the trial court. Again we do not agree. The trial court's opinion shows otherwise, the court stating as follows:

"The defendant argues that this case under the evidence and allegations of plaintiff's petition is not one wherein a declaratory judgment should be rendered, and further claims that if it is one in which originally it would be proper to render a declaratory judgment, that such judgment is not proper now because of the pendency of the case in the Justice of the Peace Court which was instituted prior to the commencement of this case."

█ V. This brings us to the decisive issue of the case, which the attorney general states thus:

"There is really only one question remaining to be decided in this action and that is, Did the court abuse its discretion in entertaining jurisdiction for the purpose of rendering a declaratory judgment when it appeared by plaintiff's own petition that there was pending before the Justice of the Peace in the same county an action between the same parties involving the same subject-matter and in which all of the issues could have been determined?"

We hold that there was no such abuse of discretion as would warrant or require a reversal at our hands.

Rule 261, Rules of Civil Procedure, provides, in part, as follows:

"The existence of another remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

The provisions for declaratory judgments, Rules 261 to 269, Rules of Civil Procedure, are patterned upon the Uniform Declaratory Judgments Act and the federal act, with certain changes, omissions, and additions, so that our Rules thereon are not identical with either the uniform act or the federal act. The sentence above quoted from our Rule 261 does not appear in section 1 of the Uniform Act (see 9 Uniform Laws Annotated 215), but is taken from the federal act. (See Rule 57, 28 U. S. C. A., following section 723c.) Counsel for plaintiff emphasize that many of the cases upon which defendant relies construe statutes or rules which do not contain that sentence. However, that is not the decisive factor in the division of authority on this question.

The attorney general relies upon many cases wherein declaratory-judgment relief has been denied because of the pendency of another action. One such case is that of Updegraff v. Attorney General, 298 Mich. 48, 298 N. W. 400, 135 A. L. R. 931. Following the publication of this opinion in 135 A. L. R., at pages 934 to 949, is an extensive annotation which includes most of the later cases on this question. While, as above indi-

cated, some of the cases might be explained by the presence or absence of the sentence above quoted from our Rule 261 in the statute or rule construed by the particular case, we are convinced that the answer to the question we have to decide is found in the basic reasoning urged to support the decisions reached in some of the leading federal cases on this question.

In the case of Western Supplies Co. v. Freeman, 6 Cir., Ohio, 109 F. 2d 693, 695, wherein a bill for a declaratory judgment was dismissed and the judgment was affirmed, Judge Arant states the rule concisely, thus:

"We are of the opinion that a suit may not be maintained under the Declaratory Judgment Act when another suit between the same parties, involving the same subject matter, is pending in another court of competent jurisdiction *and the parties are thereby enabled to procure a full and immediate adjudication of their rights."* (Italics supplied.)

In the case of Aetna Cas. & Sur. Co. v. Quarles, 4 Cir., S. C., 92 F. 2d 321, 324, wherein declaratory-judgment relief was similarly denied, Judge Parker stated the rule thus:

"We think that this discretion should be liberally exercised to effectuate the purposes of the statute and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations (see Borchard, Declaratory Judgments, 101); but it should not be exercised for the purpose of trying *issues involved in cases already pending, especially where they can be tried with equal facility in such cases,* or for the purpose of anticipating the trial of an issue in a court of co-ordinate jurisdiction." (Italics supplied.)

In the case of Carbide & Carbon C. Corp. v. United States Industrial Chemicals, Inc., 4 Cir., Md., 140 F. 2d 47, 49, in denying declaratory-judgment relief, Judge Parker stated:

"As we have pointed out a number of times, the pendency of a prior suit involving the same issues does not require the dismissal of a suit for declaratory judgment. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F. 2d 665; Piedmont Fire Ins. Co. v. Aaron, 4 Cir., 138 F. 2d 732. The granting of declaratory relief, however, is a matter resting in the sound dis-

cretion of the court; and the discretion is properly exercised *when it appears that because of the pendency of another suit the suit for declaratory relief will serve no useful purpose.* Aetna Casualty & Surety Co. v. Quarles, supra; Maryland Casualty Co. v. Boyle Const. Co., 4 Cir., 123 F. 2d 558; Brillhart v. Excess Ins. Co., 316 U. S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620.'' (Italics supplied.)

In the case of Maryland Cas. Co. v. Faulkner, 6 Cir., Ky., 126 F. 2d 175, 178, the dismissal of an action for a declaratory judgment was reversed, the court stating:

''The remedy of a declaratory judgment will be refused, granting the court has discretion to decline it, only if it will not finally settle the rights of the parties. Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F. 2d 321. *It will not be refused merely on the ground that another remedy is available or because of the pendency of another suit if the controversy between the parties will not necessarily be determined in that suit.* Columbian Nat. Life Ins. Co. v. Foulke, 8 Cir., 89 F. 2d 261.'' (Italics supplied.)

In the case of Maryland Cas. Co. v. Consumers Finance Service, Inc., 3 Cir., Pa., 101 F. 2d 514, 515, in reversing a dismissal of an action for a declaratory judgment, the court states:

''The granting of the remedy of a declaratory judgment is nevertheless discretionary with the court and it may be refused if it will not finally settle the rights of the parties or if it is being sought merely to determine issues involved in cases already pending. Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F. 2d 321. It may not be refused, however, merely on the ground that another remedy is available (Columbian Nat. Life Ins. Co. v. Foulke, supra) or because of the pendency of another suit, *if the controversy between the parties will not necessarily be determined in that suit. The latter is the case here.*'' (Italics supplied.)

From the foregoing, it will be observed that declaratory-judgment relief may be denied if there is another action then pending between the parties and, in such action, the parties

will be able "to procure a full and immediate adjudication of their rights," or the issues involved in the case already pending "can be tried with equal facility," or the suit for declaratory relief "will serve no useful purpose." By the same token, if these factors are not present, the pending action should be no bar to securing relief by a declaratory judgment and, certainly, the pending action should be no bar to such relief "if the controversy between the parties will not necessarily be determined in that suit." Applying these principles to the record before us, we are convinced that there was no such abuse of discretion by the trial court as would warrant or require a reversal herein.

The opinion rendered by the trial court herein is able and revealing. In the quotation therefrom, above set out, wherein the court determined that the issues in the criminal proceedings were not identical with those presented herein, we feel that the court sensed the reason for entertaining this action but failed to accurately state such reason. If the issue before the justice of the peace were the simple fact question whether the price differentials had been posted by plaintiff herein the court could have found that that issue could have been determined "with equal facility" in the criminal proceedings under the host of cases denying declaratory-judgment relief because of the pendency of criminal proceedings. But the question was much more complicated than that and was such that it could not be determined "with equal facility" before the justice of the peace.

The questions presented by the criminal proceedings and by the record herein were not simple fact questions but rather complicated legal questions. Plaintiff herein had been issued a license to operate a cream station and also a "Babcock Test license." In the absence of plaintiff, one of defendant's agents had wrongfully removed plaintiff's licenses from his place of business. The facts were not in dispute. They presented the legal question whether plaintiff herein has *in law* a license to operate a cream station and a "Babcock Test license." The declaratory judgment determined that *in law* plaintiff possesses both such licenses. That proposition of law is not challenged in this court.

As to the posting of price differentials, it is undisputed that such notices were not in fact posted. The issue arising from this fact is whether such notices were *in law* required to be posted. It was necessary to show the manner in which plaintiff conducts his business and to secure a legal interpretation of the statutes which require posting of price differentials. The declaratory judgment determined, *as a matter of law,* that such price differentials were not required of plaintiff because: (1) Section 3100.23 by its express terms limits its application to purchases of cream ''for butter-making purposes'' and plaintiff purchased *no* cream for that purpose *but only* for resale as cream, so that posting of price differentials was not required of plaintiff (2) plaintiff paid but one price for all cream purchased, bought cream solely on the basis of one grade only, and uniformly paid the current first-grade cream price, so that posting of differentials was not required of him. As above stated, these propositions of law are not challenged in this court and the facts thereon were not in dispute.

If the parties herein had been limited to the criminal proceedings before the justice of the peace, with what facility would these complicated legal questions have been determined? Suppose that plaintiff herein demanded a jury trial. In the trial of a criminal case before a jury in the district court, questions of law are determined by the court in its instructions to the jury or through the direction of a verdict. But a justice of the peace has no such power. Section 10555, Code, 1939, provides, ''nor can the justice give instructions to the jury.'' In St. Joseph Mfg. Co. v. Harrington, 53 Iowa 380, 381, 5 N. W. 568, we held that a justice of the peace has no power to instruct a jury, and, on like reasoning, we held, in Hunt v. Farmers' Ins. Co., 74 Iowa 231, 232, 37 N. W. 173, that a justice of the peace has no power to direct a verdict. How, then, could it be said that the complicated legal questions presented herein could be determined in the criminal proceedings before the justice of the peace ''with equal facility''? There the parties would have such legal questions determined by a lay jury without instructions on the law. Certainly, a declaratory judgment of the district court on such legal questions stands far above such a jury verdict.

Suppose that a jury was not demanded and therefore the criminal case was tried to the justice of the peace. Ordinarily, he would be a layman. Can it be seriously contended that he could settle such complicated legal questions "with equal facility" to the judge of the district court?

Suppose that the justice or the jury decided against plaintiff herein. In Atkinson v. Chicago & N. W. Ry. Co., 70 Iowa 68, 29 N. W. 808, we held that a justice of the peace has no power to set aside a verdict or grant a new trial. As the question presented by the record would be whether the evidence would warrant the judgment, the only remedy would be by appeal. Anthes v. Booser, 112 Iowa 511, 84 N. W. 516. The case would be for trial on its merits, de novo, in the district court. Section 10598, Code, 1939; Yost v. Gadd, 227 Iowa 621, 288 N. W. 667. In such event, the controversy would not be determined in the pending proceedings before the justice of the peace but in subsequent proceedings tried de novo on the merits before the very court that has entered the declaratory judgment herein.

By reason of the foregoing we hold: The parties herein would not be able to procure a full and immediate adjudication of the complicated legal questions that determine their rights and duties inter sese in the pending criminal proceedings before the justice of the peace; the issues in the pending criminal proceedings could not be tried and determined with equal facility; the trial before the justice of the peace would not necessarily determine the controversy between the parties; the entry of the declaratory judgment herein, determining plaintiff's rights, status, and legal relations with defendant under sections 3100.23, 3100.24, 3100.25, Code, 1939, served a definite, useful purpose; the court did not abuse its discretion in assuming jurisdiction to enter such declaratory judgment.

VI. We feel that it is vitally important to again emphasize that the question here presented to us and determined by Division V of this opinion, supra, is a very narrow one. To illustrate how narrow it is. we wish to stress certain im-

portant questions which are excluded from our present inquiry and decision.

The criminal offense that was presented to the justice of the peace, of course, was not a felony. Such an offense would be triable in the district court. Section 10761, Code, 1939. The considerations which support our decision in Division V, supra, would be entirely absent in the trial of such a criminal case. It is held uniformly that the pendency of such a criminal proceeding would eliminate any discretion in the trial court to entertain an action for a declaratory judgment involving the issues of law presented by such a criminal case. See annotation 135 A. L. R. 934, supra. Our holding herein is not intended to be considered in conflict with such cases. We recognize that proceedings for declaratory-judgment relief should not interfere with or interrupt such criminal cases. But that question is not before us.

Neither was the offense charged herein an indictable misdemeanor. A justice of the peace has no jurisdiction of such an offense and such a case would be triable as in the district court. Section 10669, Code, 1939. Hence, the matters relied upon in Division V, supra, would not be involved if a criminal case charging an offense that constituted an indictable misdemeanor was pending. Our holding herein has no application to such a situation and the questions presented thereby are not before us for decision.

A justice of the peace has jurisdiction of an offense involving a fine of not more than $100 or not more than thirty days' imprisonment. Section 13557, Code, 1939. Such offenses are referred to as nonindictable misdemeanors or petty offenses. These offenses, and these alone, are within the contemplation of Division V, supra. Such trials are summary and, as heretofore pointed out, are not tried in such a manner as to decide complicated legal questions with equal facility to a declaratory-judgment action in the district court. Our decision herein is, and must be, limited to this narrow question: whether the pendency of criminal proceedings for a petty offense deprives the district court of any discretion whatever to entertain a declaratory-judgment action involving questions

of law that are also presented by such petty criminal proceedings. That is all that is before us.

We are not here called upon to decide whether the action for a declaratory judgment should be permitted to interrupt the trial of such a criminal case. That question is not before us. Neither are we called upon to determine what effect should be given to the declaratory judgment as applied to the criminal case. That question is not before us. All we are called on to determine herein is whether the court had any discretion and, if so, whether it was abused. All we decide is that, in such a particular situation, the court had discretion and that it did not abuse it.

█ VII. There is another limitation on our holding in Division V, supra, which should be emphasized. It is that, in this case, the action for a declaratory judgment is directly concerned with the operation of a *legitimate* business enterprise, concerning which the state, in the exercise of its police power, has imposed valid restrictions the legal effect of which is debatable, and, in good faith, the plaintiff asks to be advised what such restrictions mean in the eyes of the law. That such a problem is one to be solved by a declaratory-judgment action is ably demonstrated by Professor Borchard, in 52 Yale L. J., 445, 446, supra, wherein he states:

''One of the principal purposes of the declaratory action is the removal of clouds from legal relations. By dissipating peril and insecurity and thus stabilizing legal relations, it avoids the destruction of the status quo, and assures a construction or interpretation of the law *before* rather than after breach or violence. * * *

''Possibly in no branch of litigation is the declaration more useful than in the relations between the citizen and the administration. With the growing complexity of government and the constantly increasing invasions of private liberty, with ever widening powers vested in administrative boards and officials, the occasions for conflict and dispute are rapidly augmenting in frequency and importance. Yet the very fact that such disputes turn mainly upon questions of law, involving the line marking the boundary between private liberty and

public restraint, between private privilege and immunity, on the one hand, and public right and power, on the other, makes this field of controversy peculiarly susceptible to the expeditious and pacifying ministrations of the declaratory judgment. * * *

"The imposition of governmental requirements as a condition of the exercise of private rights, such as engaging in business, erecting buildings, or using public facilities, is an inherent element of modern government. Such requirements are frequently accompanied by the sanction of a criminal penalty for violation. But in a constitutional government only legal demands need to be obeyed, and the question arises whether the legality of the particular requirement can be put to the test in advance of enforcement or only after it has been imposed and observed, or, in event of refusal to obey, only on the suit for a criminal penalty. Speed is here a factor, and it is a sound view that the administration should not be unduly hampered by the courts in the enforcement of its demands.

"By the construction placed upon declaratory actions in many jurisdictions the individual, threatened by the imposition of governmental demands and requirements, such as license, fee, tax, or police-power restriction, may put to the test the legality of the restriction without risking the penalties of disobedience or the hazards and expense of injunction. Thus businessmen, notified to change their methods of doing business and threatened with a criminal penalty for violation, have claimed a declaration of their privilege to conduct their business free from the requirement and penalty and have obtained a conclusive construction of the administrative order before changing the status quo, without chancing the risks and precarious outcome of a bill of injunction."

A careful review of the decided cases has failed to produce a single case where a court has construed a rule or statute on declaratory judgments containing a provision such as we have in Rule 261 (the existence of another remedy does not preclude a judgment for declaratory relief in cases where it is appropriate) and the court has carefully analyzed the situa-

tion of a proceeding in a justice court involving a petty offense and compared the facility of such a proceeding with a declaratory-judgment action in the district court. One of the cases upon which appellant relies herein is that of Updegraff v. Attorney General, supra, 298 Mich. 48, 298 N. W. 400, 135 A. L. R. 931. In that case the Michigan statute did not contain the sentence above quoted from our Rule 261, and the court did not carefully analyze the facility of summary proceedings in a justice court as contrasted with the far more adequate machinery afforded by a declaratory-judgment action in the district court. We do not regard such decision as persuasive here.

Language in some other cases is somewhat regrettable and has prompted Professor Borchard to conclude, 52 Yale L. J. 493, as follows:

''(7) That the broad conception of 'crimes' and 'criminal' law should be analyzed and broken down, and police power measures carrying a penalty should no longer be classified as 'crimes' or exposed to the same methods of adjudication as crimes;

''(8) That on the contrary, the victim, target or subject of these police power measures should be enabled to challenge their constitutionality, applicability and construction by the simple method of declaratory adjudication, and thus dissipate the mass of judicial detritus which has accumulated around the adjudication of legislative prescriptions and so largely frustrated an efficient administration of justice.''

 Confining our decision herein to the narrow question that is before us, we are in accord with Professor Borchard's suggestions as applied to prosecutions of petty offenses before a justice of the peace. They are not to be classified with indictable offenses tried in the district court, or, if tried elsewhere, tried in accord with the procedure prescribed for the district court, when the petty offenses are, as here, police-power measures. When complicated legal questions are presented by such police-power measures, the pendency of a petty criminal proceeding in the justice court should not de-

prive the district court of any discretion whether or not to entertain a declaratory-judgment action if, in the sound exercise thereof, the court concludes that such legal questions cannot be settled with equal facility by the justice of the peace.

If the beleaguered businessman stands trial before the justice and is acquitted, the law has not been adequately clarified as to his business and, of course, he has nothing from which to appeal to the district court. His remedy still is by declaratory-judgment proceedings. If the action before the justice is an absolute bar to such relief, to gain a decision by the district court he should plead guilty and appeal. He is then confined to the limited pleadings of a summary proceedings and might have difficulty in broadening the issues to adequately solve his problem. Why not give the district court some discretion in such a situation? Fortunately, the question is an open one in this jurisdiction. The position we now take may perhaps seem to be an advanced one. But, as heretofore demonstrated, our decision is supported by sound principles of law and logic. No court has made the careful analysis which we have here undertaken. No court has passed upon the exact question we here decide. There is a first time for everything. The law must keep pace with the times. With the vast development of administrative law, legal business is being rapidly transferred from the courts to various boards and bureaus because the courts are accused of being too legalistic and not sufficiently realistic. We take this opportunity to demonstrate that courts can be realistic as well as boards and bureaus.

The cause is—Affirmed.

HALE, SMITH, MULRONEY, MANTZ, and WENNERSTRUM, JJ., concur.

OLIVER, J., and BLISS, C. J., and GARFIELD, J., dissent.

OLIVER, J. (dissenting)—I am unable to agree with this opinion. It overrides provisions of the Constitution and statutes of Iowa and is contrary to all decisions and all statements of commentators which have come to my attention. I fear my brothers may have been unconsciously influenced by a desire

to secure a result deemed desirable in this one case. Decisions written to secure a predetermined result frequently make bad law.

Division I of the opinion states:

"*Although not a controverted proposition in this case,* it may well be noted that generally the courts have held that declaratory-judgment procedure may be employed to challenge police-power statutes of the nature of those here involved which forbid or require certain practices and provide penalties for noncompliance." (Italics supplied.)

Nevertheless, Division VII quotes at length from an article by Professor Borchard, an able and leading text writer upon declaratory judgments, pointing to the advantages and desirability of testing by declaratory action the validity and applicability of statutes such as those here involved. This quoted statement, with which I agree, is unnecessary to the opinion because that proposition is not controverted in this case.

The question in this case is not whether a declaratory action to test such a statute is proper but whether a defendant who delays until after a criminal prosecution has been instituted may institute and maintain such declaratory action while such criminal prosecution is pending. Division V of the majority opinion holds that it may be instituted and maintained when the pending criminal prosecution is before a justice of the peace and involves complicated legal questions, because such officer may be a layman not learned in the law, and because if the accused is convicted and appeals the case would be triable de novo in the district court.

Part of Division V is devoted to a discussion of jury trials in criminal prosecutions before justices of the peace, and authorities are cited which hold a verdict may not be directed and instructions may not be given such a jury. All such discussion is beside the point because the majority concedes that the accused only, and not the prosecution, may demand a trial by jury. If the accused does not demand a trial by jury the trial is to the justice of the peace. It is obvious that one who, at his election, may be tried to the justice may not base a right to declaratory relief upon the complaint that a jury in

justice court acts without instructions or direction by the justice. Hence the afore-mentioned quotation from Professor Borchard, with which I agree, and the cited authorities on jury procedure in criminal prosecutions in justice court, with which I agree, are surplusage. They may appear impressive but they afford no support for the majority decision.

Another quotation from Professor Borchard in Division VII of the opinion states that the broad conception of ''crimes'' and ''criminal'' law should be analyzed and broken down, and police-power measures carrying a penalty should no longer be classified as ''crimes'' or exposed to the same methods of adjudication as crimes. The majority expresses its accord with these suggestions and bases part of its reasoning thereon. Professor Borchard does not say such suggestions are the law but that they *should be.* They are not the law in Iowa. The only way they might become the law would be by legislative enactment. If and when the legislature changes the statutes to provide for criminal procedure such as that suggested by Professor Borchard such procedure should be recognized by the courts. Until that time this court should not infringe upon that legislative prerogative.

However, I do not imply that the remedy afforded by declaratory procedure would not be applicable to such situations provided the accused did not delay his action until after the criminal prosecution was commenced.

Although the majority opinion quotes freely from statements from Professor Borchard *not* in point, it overlooks his statement concerning the precise proposition here involved. In Borchard on Declaratory Judgments, Second Ed., 1022, in the chapter on Penal Legislation—Civil Adjudication or Criminal Prosecution, it is stated, under the heading of Conditions of Seeking Declaration:

''On the other ·hand, not every doubter of his rights under a law carrying a criminal penalty should be permitted to invoke the protection of a civil adjudication. If the District Attorney actually obtains an indictment or begins his prosecution, the rules of equity should limit the occasion for the court's exercise of its power of restraint [usually confined to

irreparable injury to property. Cline v. Frink Dairy Co., 1927, 274 U. S. 445, 47 S. Ct. 681, 71 L. Ed. 1146], and the prosecuting officer must have considerable leeway in selecting the offense and offenders to be indicted. Where the prosecution is imminent but not yet begun, equity exercises more latitude in protecting property or a business against the impending prosecution. Only where the District Attorney fails to initiate the suit, or where he threatens to prosecute or charges a violation of law and then fails to follow up the threat or charge, is the foundation laid for an action by the party charged for a declaration either that the statute or regulation is invalid or that his conduct is privileged, i. e., not within the terms of the prohibitory statute."

The foregoing statement of the rule was cited and followed by Judge Parker and his distinguished associates of the Fourth Circuit Court of Appeals, in Spence v. Cole, 4 Cir., N. C., 137 F. 2d 71, 72, which involves prior pending criminal prosecutions for violations of a city ordinance. The court said:

"We may assume that the enforcement of the ordinance against plaintiffs under the circumstances here disclosed would constitute a violation of their constitutional rights. * * *

"We are asked to hold that plaintiffs are entitled to a declaratory judgment establishing their rights. The granting of a declaratory judgment, however, is a matter resting in the sound discretion of the court (Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F. 2d 321); and it is clear that the discretion ought not be exercised in a case of this character where its only effect would be to decide matters, as pointed out in the quotation above, which could be better decided in the criminal courts of the state. This is particularly true in view of the fact that criminal actions are pending against plaintiffs in the state courts involving the identical questions as to which plaintiffs ask a declaratory judgment. See Borchard Declaratory Judgments 2d ed. pp. 312, 653, 1022; Aetna Casualty & Surety Co. v. Quarles, supra.

"The decree appealed from will accordingly be reversed."

Updegraff v. Attorney General, 298 Mich. 48, 51, 298 N. W. 400, 401, 135 A. L. R. 931, was a declaratory action brought

by one who was being prosecuted before a justice of the peace for a misdemeanor arising through his alleged failure to observe the quarantine on dogs. In that case it is stated:

"While plaintiff raises 14 questions in his petition, they relate to matters that may be presented in the criminal case that is pending. We condemn the practice of a person who, after being charged with violating the law, then asks for a declaratory judgment in an independent cause, with the result that two cases involving the same subject matter are pending at the same time. If such a practice were permitted, it would cast an unnecessary burden on the courts and the law enforcement authorities. The general rule is set forth in Woolard v. Schaffer Stores Co., 272 N. Y. 304, 311 (5 N. E. [2d] 829, 109 A. L. R. 1262); 273 N. Y. 527 (7 N. E. [2d] 676, 109 A. L. R. 1267), where Justice O'Brien said: 'When, however, another action ·between the same parties, in which all issues could be determined, is actually pending at the time of the commencement of an action for a declaratory judgment, the court abuses its discretion when it entertains jurisdiction. Colson v. Pelgram, 259 N. Y. 370 (182 N. E. 19).'"

The following statement appears in 23 Corn. L. Q., 314, 318:

"Many courts, while refusing to enjoin a threatened criminal prosecution, have, under the Declaratory Judgment Act, passed on the constitutionality of the statute or ordinance involved; but *no case has been found in which a court has given a declaration on an issue vital to a criminal prosecution which has already begun.*" (Italics supplied.)

One impelling reason why declaratory relief should be denied when it would determine issues essential to a criminal prosecution already commenced is that it would interfere with the jurisdiction of the criminal courts. To permit those charged with crime to thereafter institute and maintain independent actions for declarations of their innocence would tend to impede law enforcement and the rule should be limited to circumstances similar to those warranting injunctive relief, which the trial court found were not present in the

case at bar. See 29 Ill. L. Rev. 216; Borchard on Declaratory Judgments, Second Ed., 1022, supra.

The main basis of the majority opinion, as set out in Division V thereof, is that the decision of the justice of the peace on legal propositions is not worthy of full faith and credit because he may be a layman not learned in the law. That is not for this court to say. Article I, section 11, Constitution of Iowa, provides in part:

"All offences less than felony and in which the punishment does not exceed a fine of One hundred dollars, or imprisonment for thirty days, shall be tried summarily before a Justice of the Peace, or other officer authorized by law * * * saving to the defendant the right of appeal * * *." See State v. Church, 8 (Clarke) Iowa 252.

To the same effect is section 13557, Code of Iowa, 1939. The constitution qualifies a justice of the peace to adjudicate such cases. This court should not modify the constitutional provision by holding such officer is not qualified or that his adjudications should be discredited.

The majority opinion cites no authority in support of its holding that declaratory relief is proper because the criminal prosecution is pending before a justice of the peace. The distinguished trial court did not so hold. Nor did the able counsel for appellee make any such contention. No case, either criminal or civil in origin, has come to my attention in which this illusory theory has even been suggested.

Under such theory it might be argued that declaratory relief would be proper in a case pending before the deputy industrial commissioner or the industrial commissioner when the case involved complicated legal questions which a layman could not settle "with equal facility" to the district court. Yellow Cab Transit Co. v. Overcash, 8 Cir., Mo., 133 F. 2d 228, 232, was an action to enjoin a proceeding before a workmen's-compensation commission and for a declaratory judgment. That case involved difficult legal questions. Apparently the facts were not in dispute. The Circuit Court of Appeals of this circuit denied declaratory relief, stating:

"The grounds which appellant advances here in support

of its petition for a declaratory judgment, as we have seen, may be presented as defenses before the Missouri Compensation Commission and before the Missouri courts to which appellant has the right to appeal.''

The majority opinion cites and quotes from the decision by Judge Parker in Carbide & Carbon Chemicals Corp. v. United States Industrial Chemicals, Inc., 4 Cir., Md., 140 F. 2d 47, 49, as to general rules for declaratory actions in civil cases. The part of that decision quoted in the majority opinion does not include the rule therein enunciated which follows immediately thereafter:

''Ordinarily, the court first acquiring jurisdiction of a controversy should be allowed to proceed with it without interference from other courts under suits subsequently instituted.''

That decision also states:

''When it is said in the cases that declaratory relief should be refused 'where a proceeding involving identical issues is already pending in another tribunal where they can be tried with equal facility', the 'equal facility' refers to matters affecting the convenience of parties and witnesses and the position of the case on the docket as affecting a speedy hearing, not to the knowledge or lack of knowledge of the trial judge.''

In Division VII the majority opinion states that no court has ever considered the legal theory it has evolved. That statement is correct to the extent that apparently no court or lawyer has ever suggested that declaratory relief would be proper because the criminal prosecution was pending before a judge who, although qualified by constitution or statute, was not a lawyer. Apparently the reason is that courts have immediately recognized that a doctrine which would permit interference with pending criminal prosecutions would be dangerous and unsound.

In Updegraff v. Attorney General, 298 Mich. 48, 298 N. W. 400, 135 A. L. R. 931, supra, in which the pending prosecution before a justice of the peace apparently involved legal questions only, the Supreme Court of Michigan was not troubled by any theory that the competency of the justice to

determine such questions should be considered. That decision states: "We condemn the practice" of seeking declaratory relief in such cases.

The majority opinion points out that the Michigan declaratory-judgment act differs from ours. In Division I of the majority opinion it is noted that the difference is not a decisive factor. In any event there is no such difference as would warrant a holding by this court approving a doctrine which was absolutely "condemned" by the Michigan Supreme Court. Moreover, as noted in Division V, the Iowa rule in question " is taken from the federal act." The statement in the majority opinion that there is no analogous case under a like declaratory-judgment act, overlooks Spence v. Cole, supra, 4 Cir., N. C., 137 F. 2d 71, in which the prior pending actions were for petty offenses, to wit, violations of city ordinances, and the court held declaratory relief was not proper "in view of the fact that criminal actions are pending," citing as authority the page from Borchard on Declaratory Judgments from which I have already quoted [1022]. If this is "regrettable" language it is merely a statement of the rule heretofore uniformly followed.

In Division V the majority discusses "equal facility" and overlooks the definition of that term by Judge Parker in Carbide & Carbon Chemicals Corp. v. United States Industrial Chemicals, Inc., 4 Cir., Md., 140 F. 2d 47, 49, that "the 'equal facility' refers * * * not to the knowledge or lack of knowledge of the trial judge."

In Division VII the majority quotes, from 52 Yale L. J. 446, "Speed is here a factor." But in the same division the majority points out that justice-court trials of this nature are "summary." That means without delay or formality. The prosecution in this case was instituted June 11, 1943, and was stopped by injunction. The declaratory judgment was not rendered by the district court until November 1944, and is just now (1946) being decided upon appeal to this court. The criminal case could have been tried to the justice of the peace within one week and if the accused had been acquitted the state had no right of appeal.

After such a criminal prosecution is instituted the ac-

cused could usually have his case tried in justice court and, if convicted, have his trial upon appeal, sooner than he could have secured the trial of a declaratory-judgment suit instituted when the criminal prosecution was started. Speed is a factor only where the law-enforcing officers delay filing charges and not where the defendant delays his declaratory action until after charges are filed.

Some of the reasoning of the last paragraph of Division VII is based upon the statement that one who appeals from justice court to district court is "confined to the limited pleadings of a summary proceeding." That statement is erroneous. It is well settled that the accused may plead over.

In Division VI the majority would limit the scope of its decision. In so doing the opinion refers to felonies, which are triable in district court only, indictable misdemeanors, which are triable in district and municipal courts, and nonindictable misdemeanors or petty offenses, which are triable in justice courts, superior courts, municipal courts, police courts, and mayors' courts.

The opinion states that "proceedings for declaratory-judgment relief should not interfere with or interrupt" the trial of the felonies. But the majority apparently assumes the reason for the rule is that felonies are triable only in district court. Accordingly, the majority would put indictable misdemeanors (triable in district court and in municipal court *as in district court*) in the same category and would limit its decision to nonindictable misdemeanors (petty offenses).

This theory that the right to declaratory relief is in part dependent upon whether the offense charged is a petty offense (nonindictable misdemeanor), as distinguished from an indictable misdemeanor, is not to be found in any declaratory-judgment decision which has come to my attention. Apparently it will be promulgated for the first time by the majority opinion. Perhaps its origin is immaterial but it closely resembles statements relative to a procedural question in an opinion recently circulated by the writer of this dissent in State v. Berg, 237 Iowa 356, 21 N. W. 2d 777.

However, such classification has no bearing upon the right to declaratory relief. The true rule, recognized by most of

the courts which have allowed the challenging of penal laws by declaratory action, is that where the activity is malum in se courts will not allow the accused to maintain actions for declaratory judgment, even before the prosecution is instituted, and in borderline cases, such as the interpretation of gambling statutes, courts hesitate to allow such procedure. The line of demarcation is not between indictable and nonindictable offenses. It is based upon the nature of the activity rather than the penalty.

It is true that in this state the great majority of cases in which the remedy would be available are nonindictable misdemeanors. But there are some Iowa statutes which are in the indictable-misdemeanor class because the penalty for their violation is more than $100 or thirty days in jail, but which, nevertheless, are police-power statutes of the nature of those here involved. Obviously, violations of such statutes are in the same category as petty offenses, as concerns the right to test the statutes by declaratory actions. In that connection, it may be noted that the statement from Borchard on Declaratory Judgments, hereinbefore quoted, refers to indictments.

Prosecutions for petty offenses may be in justice court, police court, mayor's court, superior court, or municipal court. Trials to the superior court, mayor's court, police court, and justice court are all summary, with the right of defendant to appeal to district court. Judges of the superior court are lawyers.

With respect to prosecutions for violations of municipal ordinances, all of which are nonindictable offenses, trials to the municipal, superior, mayor's, police, and justice-of-the-peace court, are all summary and appealable to the district court. Judges of the municipal court are lawyers and municipal and superior courts have jurisdiction of declaratory actions.

The basis of the holding in Division VI is that a declaratory action should be available to one who is being prosecuted for a petty offense because such trials are summary and are not tried in such manner as to decide complicated legal questions with equal facility to a declaratory-judgment action in the district court. If the summary nature of the trial is a

determining element the majority opinion would not only interfere with authority imposed by the constitution and statutes upon justices, police judges, and mayors, who need not be lawyers, but would also impair the authority of municipal and superior judges, who are lawyers.

The conclusion of Division VI is that the decision must be limited to the narrow question whether the pendency of criminal proceedings for a petty offense deprives the district court of any discretion whatever to entertain a declaratory action. This conclusion overlooks the exception to the general rule, which is that, under certain conditions, such as irreparable injury to property, the court may exercise its power of restraint, even after indictment. See Borchard on Declaratory Judgments, Second Ed., 1022, hereinbefore quoted.

Division VII states another limitation to the decision is that, "the action for a declaratory judgment is directly concerned with the operation of a *legitimate* business enterprise, concerning which the state, in the exercise of its police power, has imposed valid restrictions the legal effect of which is debatable, and, in good faith, the plaintiff asks to be advised what such restrictions mean in the eyes of the law." That statement simply overlooks the issue. No one contends the action would not lie if brought before the pending criminal charge was instituted. But it is clear in this case that the declaratory action was aimed directly at the criminal prosecution. The second paragraph of the majority opinion states that the petition for declaratory judgment asserted, "on June 11, 1943, an inspector * * * filed an information before a justice of the peace * * * charging plaintiff," etc.

The same paragraph shows that the dispute as to plaintiff's legal status and rights was one of long standing. Had plaintiff desired an adjudication thereof he could have brought this action at any time within more than a year prior to June 11, 1943. But he did not elect to do so. He delayed until the criminal court had acquired jurisdiction of the case and then enjoined the prosecution and sought a declaratory judgment. The Michigan Supreme Court condemns such procedure, federal courts refuse to permit it, commentators state it is improper, and no writer or court has heretofore approved it.

Our recent decision in Peff v. Doolittle, 235 Iowa 443, 15 N. W. 2d 913, although not here directly in point, reaffirms the principle that a court having possession of a person or property cannot be deprived of the right to deal therewith until its jurisdiction is exhausted and that no other court has the right to interfere with the proceedings. See discussion in Ex parte Baldwin, 69 Iowa 502, 29 N. W. 428.

The result of the majority decision will be to interfere with the administration of criminal justice in such courts. Moreover, a civil action in justice court will frequently be met with a subsequent declaratory-judgment action in district court involving the same questions. This procedure will infringe upon the powers granted by the constitution to justices in civil cases also and will interfere with the orderly disposition of such litigation.

Where the declaratory action is brought to determine the propriety of a criminal prosecution in justice court the practical result, in most cases, will be to stay that prosecution, even though prosecution be not stayed by temporary injunction, as it was in the case at bar. The result of the judicial diminution, by the majority opinion, of the constitutional and statutory qualifications and powers of justices of the peace, mayors, and police judges will be unfortunate.

Although the majority opinion is not based thereon, perhaps it should be noted that Employers' Liability Assur. Corp. v. Ryan, 6 Cir., Ohio, 109 F. 2d 690, relied upon by the trial court, did not involve a prior pending action between the parties to the declaratory action. See Western Supplies Co. v. Freeman, 6 Cir., Ohio, 109 F. 2d 693, decided by the same court on the same day. See, also, Brillhart v. Excess Ins. Co., 316 U. S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620; Indemnity Ins. Co. v. Schriefer, 4 Cir., Md., 142 F. 2d 851; State ex rel. United States Fire Ins. Co. v. Terte, 351 Mo. 1089, 176 S. W. 2d 25, which discusses the general rule and lists many federal and state decisions; 135 A. L. R. 934; 142 A. L. R. 40; 16 Am. Jur. 295, section 22; 1 C. J. S. 1018, 1029, section 18.

BLISS, C. J., and GARFIELD, J., join in this dissent.