**FIRST MIDWEST CORPORATION,**
Appellee,

v.

**CORPORATE FINANCE ASSOCIATES,**
Appellant.

**No. 01–1560.**

Supreme Court of Iowa.

June 11, 2003.

---

Randy V. Hefner of Hefner, Bergkamp & Rhoads, P.C., Adel, and Norman Denenberg, Omaha, Nebraska, for appellant.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellee.

NEUMAN, Justice.

Respect for the sound judgment of our trial courts leads us to rarely reverse discretionary decisions. But the facts surrounding this appeal persuade us that the Iowa court's denial of a stay pending trial in Nebraska permitted unreasonable—in fact, blatant—forum shopping by the plaintiff who summarily prevailed here. We therefore reverse.

## I. Background Facts and Proceedings.

The pertinent facts are essentially undisputed. The plaintiff, First Midwest, is an Iowa corporation engaged, among other things, in the packaging business. The defendant, Corporate Finance Associates (CFA), is a Nebraska consulting firm. First Midwest contracted with CFA for consultation services in connection with the sale of First Midwest's feedbag business in Minnesota. The business was ultimately sold but First Midwest refused to pay CFA the fee it demanded. First Midwest claimed it was not obligated to pay a commission because CFA had not found the buyer. CFA insisted the sum due was not a brokerage commission but payment for consulting services leading to the sale.

CFA filed suit in Nebraska district court to recover its fee. Following discovery, both parties moved for summary judgment. The court determined that material fact issues existed concerning the parties' agreement. It therefore denied both motions and promptly set the case for trial.

First Midwest then filed this declaratory judgment action to determine the extent of its obligations under the contract. CFA sought a stay until the Nebraska proceedings had run their course. First Midwest moved for summary judgment. The district court denied the stay, and CFA requested a reconsideration of that ruling. The court subsequently held a hearing on the matter which CFA neglected to attend. At that hearing the court not only denied CFA's request to revisit the stay issue but granted First Midwest's unresisted motion for summary judgment. CFA appealed.

The district court subsequently held a hearing on First Midwest's request for contractual attorney's fees. It awarded $5507.50. CFA filed a second appeal; First Midwest cross-appealed the amount of the award. The consolidated appeals are now before us.

## II. Issues on Appeal and Cross-Appeal.

Three questions are presented: (1) Did the district court abuse its discretion by refusing to stay a suit in Iowa pending trial of a mirror-image suit in Nebraska? (2) Was it error for the court to grant First Midwest's motion for summary judgment on the merits? (3) Did the court abuse its discretion in its award of contractual attorney fees to First Midwest? Because we find the answer to the first question dispositive of the appeal, we address the remaining questions only to vacate the judgments entered in connection with those issues.

## III. Scope of Review.

CFA's motion for stay relied on the doctrine of comity, a principle that permits—but does not require—a court to stay a pending proceeding if a case involving the same parties and subject matter is pending in the court of another state. *Edward Rose Bldg. Co. v. Cascade Lumber Co.*, 621 N.W.2d 193, 195–96 (Iowa 2001). CFA concedes, as it must, that the decision to grant or deny a stay rests in the sound discretion of the trial court. *Chrys-*

ler Credit Corp. v. Rosenberger, 512 N.W.2d 303, 305 (Iowa 1994). That discretion is not unbounded, however. Reversal may be warranted where discretionary action regarding a stay " 'is capriciously exercised or abused.' " Id. (citation omitted).

## IV. Motion for Stay.

**A. Grounds and applicable law.** CFA's request for comity rested on the following facts. As a Nebraska plaintiff seeking enforcement of a contract substantially performed in Nebraska, CFA had sued First Midwest eleven months earlier in Nebraska district court. At no time did First Midwest object to the jurisdiction of the Nebraska court or otherwise contest CFA's choice of forum. The parties engaged in extensive discovery. Both parties then moved for summary judgment. The Nebraska district court determined there were genuine issues of material fact concerning the parties' contract, i.e., what First Midwest aptly describes here as the parties' "partially performed, unexecuted written agreement."

After denying the cross-motions for summary judgment in April 2001, the Nebraska court promptly scheduled a September 2001 trial date. Only then, in May 2001, did First Midwest file this declaratory judgment action, a "mirror image" of the Nebraska suit. CFA argued in the trial court, and urges on appeal, that First Midwest's action—following on the heels of its rejected motion for summary relief in Nebraska—constitutes forum shopping of the worst sort, designed solely to harass CFA and forestall a scheduled trial on the merits.

In resisting the stay, First Midwest (1) contested the Nebraska court's finding that fact issues existed, claiming the case in Iowa could be decided by way of summary judgment to avoid the time and expense of trial and, (2) urged that in Iowa

(by contrast to Nebraska), First Midwest would be entitled to "prevailing party attorney fees and costs." *Compare* Iowa Code § 625.22 (2001) (permitting attorney fee award if judgment recovered on written contract that contains agreement to pay such fees), *with Chambers–Dobson, Inc. v. Squier*, 238 Neb. 748, 472 N.W.2d 391, 402 (1991) (reciting Nebraska rule that contractual agreement for attorney fee award in event of litigation involving contract is "contrary to public policy and void").

Factors relevant to the grant or denial of a stay in this context include:

> comity, the desirability of avoiding a multiplicity of forums, whether the foreign litigation is at an advanced or preliminary stage, the likelihood of obtaining complete relief in the foreign jurisdiction, and the possibility that a judgment entered in the foreign jurisdiction will give rise to collateral estoppel or will render the matter before the court res judicata. Where a prior foreign action involves the same parties and the same issues and is pending before a court capable of doing prompt and complete justice, the court's discretion may be freely exercised in favor of a stay.

1 Am.Jur.2d *Actions* § 78, at 773 (1994).

Because of the discretionary nature of these judgment calls, our prior cases do not precisely define when comity will require a court to grant a stay or dismiss an action when litigation involving the same parties and subject matter are pending elsewhere. In *EFCO Corp. v. Norman Highway Constructors, Inc.*, 606 N.W.2d 297, 300 (Iowa 2000), this court held comity did not require an Iowa court to defer to a Texas court where the Texas lawsuit was filed only an hour and a half earlier than the Iowa lawsuit. The case's holding

carries little weight here, because CFA—and First Midwest—actively engaged in the Nebraska litigation nearly a year before the Iowa action was commenced.

In *Ostrander v. Linn,* 237 Iowa 694, 702–03, 22 N.W.2d 223, 228 (1946), this court observed that declaratory relief may be denied where, in a pending action, a full and immediate adjudication of the parties' rights may be obtained and the issues tried "with equal facility." But in *Ostrander,* where the other pending action was a criminal case in the justice of the peace court, this court found no abuse of trial court discretion in letting the declaratory judgment action proceed, given the inability of the original court to fully resolve the complex legal issues presented. *Ostrander,* 237 Iowa at 704, 22 N.W.2d at 228. Plainly the case is distinguishable from the case before us, where either the Nebraska or Iowa court could try the case "with equal facility."

In other jurisdictions, declaratory judgment actions have been known to merit more scrutiny "to ensure that the declaratory plaintiff is not motivated by forum-shopping concerns." *BASF Corp. v. Symington,* 50 F.3d 555, 558 (8th Cir.1995). This is especially true if the action appears aimed at "'wresting the choice of forum from the "natural" plaintiff'" who ordinarily controls such decisions. *Id.* (citation omitted). Characterizing this as the "general rule," the court in *Waicker v. Colbert,* 347 Md. 108, 699 A.2d 426, 428 (1997), held that, in the absence of "unusual and compelling circumstances," it is inappropriate for a court to entertain a declaratory judgment action where identical issues are pending in another proceeding. The court said:

> Strong policy considerations support application of this rule. Absent such a rule, "almost any pending action could be interrupted and held at bay until the determination, in one or more subsequently instituted declaratory judgment actions, of issues culled out of the pending action." Issuing a declaratory judgment under such circumstances "would unduly burden the courts," and would be undesirable ... and contrary to our policy which favors the determination of related matters in a single action.

*Waicker,* 699 A.2d at 429 (citations omitted). The Maryland court's decision echoed sentiments expressed many years before in California, where an appeals court reversed a trial court's decision to permit a declaratory judgment action to proceed in the face of litigation on identical issues then pending in Texas. *Simmons v. Superior Ct. of Los Angeles County,* 96 Cal. App.2d 119, 214 P.2d 844, 853 (1950). Equating comity with "[d]ecent respect for Texas and its courts," the court said:

> The rule which forbids a later action in the same state between the same parties involving the same subject matter rests upon principles of wisdom and justice, to prevent vexation, oppression and harassment, to prevent unnecessary litigation, to prevent a multiplicity of suits—in short, to prevent two actions between the same parties involving the same subject matter from proceeding independently of each other. We think there is no distinction in reason or difference in principle between a case where a later action between the same parties involving the same subject matter is commenced in the same state and a case where a later action between the same parties involving the same subject matter is commenced in another state.

*Id.* at 849.

**B. Analysis.** The district court gave two reasons for rejecting comity here. First, while recognizing that the Nebraska case was "ready for trial," the court nevertheless concluded the Nebraska court "w[ould] not apply Iowa law to the con-

struction and interpretation of [the parties'] contract." Second, because Nebraska law does not allow enforcement of the attorney fee provision of the contract, the court concluded litigation in Iowa would provide the opportunity for more complete relief.

■■■ The court's first stated reason cannot withstand scrutiny. Under well-recognized conflict of laws principles, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws § 188 (1971). "Significant relationship" is determined by reference to the place of contracting, place of performance, location of the contract's subject matter and the domiciles of the parties. *Id.* It appears to us that Nebraska law may well govern this controversy. But in any event Nebraska has adopted the Uniform Judicial Notice of Foreign Law Act. *See generally* Neb.Rev.Stat. §§ 25–12, 101 to 25–12, 107 (2001). Assuming, without deciding, that Iowa law might apply to this contract, there is nothing in this record to suggest that a Nebraska court would refuse to apply Iowa's rules of interpretation and construction or that Nebraska's and Iowa's rules in that regard are anything but identical.

■■■ The court's second stated reason—the possibility of incomplete relief—would be a factor to consider if, in fact, the parties' dispute centered on a *written contract* providing for the recovery of attorney fees by the prevailing party. *See* Iowa Code § 625.22. As already noted, such contractual agreements for fees are considered contrary to public policy in Nebraska and, hence, unenforceable. *See Chambers–Dobson, Inc.,* 472 N.W.2d at 402. The contractual dispute before us, however, rests on facts surrounding the partial performance of an unexecuted writing. First Midwest, which contested the unexecuted contract's enforceability in Nebraska, has now reversed its position solely for the purpose of claiming the right to debate its provisions on Iowa turf and support its "incomplete recovery" theory to resist the stay.

While procedurally there may be no impediment to the strategy pursued by First Midwest here, we think the likelihood of recovery on a written contract under this record highly remote. Thus when comparing this factor to the others bearing on the court's decision—the advanced stage of the Nebraska proceedings, avoidance of multiplicity of forums, and fundamental respect for decisions of our neighboring states— we think the trial court gave unreasonable weight to this consideration. In the face of proof that the Nebraska court was capable of and ready to render complete justice to these parties within weeks, the decision by the Iowa court to derail that course at the behest of an Iowa plaintiff can only be described as arbitrary and capricious. It resulted in forum shopping that is contrary to the most basic notions of comity.

## V. Disposition.

Because we conclude the court abused its discretion when it refused CFA's request for a stay pending trial of the identical issues in Nebraska, we reverse and remand for entry of the stay to which CFA was entitled under this record. We likewise vacate the summary judgment for First Midwest that followed, along with its award of attorney fees. Costs on appeal and cross-appeal are taxed to First Midwest.

**REVERSED AND REMANDED ON APPEAL; CROSS–APPEAL MOOTED.**