# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 90

APRIL TERM, A.D. 2019

September 4, 2019

LYLE L. WILLIAMS,

Appellant
(Plaintiff),

v.

S-19-0016

STATE OF WYOMING ex rel., UNIVERSITY
OF WYOMING BOARD OF TRUSTEES,

Appellee
(Defendant).

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*

Jason M. Tangeman, Nicholas & Tangeman, LLC, Laramie, Wyoming.  Argument by Mr. Tangeman.

*Representing Appellee:*

Bruce A. Salzburg and Kara L. Ellsbury, Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Mr. Salzburg.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*FOX, J., delivers the opinion of the Court; KAUTZ, J., files a dissenting opinion, in which DAVIS, C.J., joins.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]  Lyle Williams brought a handgun to the Wyoming Republican Convention at a University of Wyoming (UW) facility, despite a UW regulation barring firearms on the UW campus.  He was cited for misdemeanor criminal trespass after he refused to either relinquish his handgun or leave campus.  Mr. Williams pleaded not guilty in circuit court, and then obtained a stay of the circuit court criminal proceedings while he filed an action for declaratory judgment in district court.  He contended that the regulation violated his right to bear arms under the United States and Wyoming constitutions; and that Wyo. Stat. Ann. § 6-8-401 (LexisNexis 2017) was not a part of the Wyoming Firearms Freedom Act and, thus, preempted the UW regulation prohibiting firearms on campus.  A favorable declaration from the district court, or a favorable decision from this Court, would resolve the matter pending in circuit court.  The district court granted summary judgment in favor of UW.  We reverse with instructions to dismiss so that the matter may proceed where it originated, in the circuit court.

## ISSUES

[¶2]  We decide the following issues, one of which is dispositive:

> 1.  Did Mr. Williams have standing to challenge the legality of University of Wyoming Regulation 2-178?
>
> 2.  Did the district court correctly conclude that Mr. Williams' declaratory judgment action served a useful purpose?

## FACTS

[¶3]  Lyle Williams was openly carrying his Massachusetts-manufactured Kahr 9 mm semi-automatic pistol when he attended the Wyoming Republican Convention at the UW Conference Center in April 2018.  University police approached Mr. Williams and asked him to relinquish his weapon pursuant to UW Regulation 2-178(VI)(D), which states:

> No dangerous weapon may be stored or carried in or upon University facilities.  Any person carrying a dangerous weapon in a University facility is required to relinquish the weapon to the UW Police Department voluntarily or upon request.  The weapon will be returned when the person leaves the University facility, unless the UW Police Department determines that the weapon should be retained in an investigation.  If a person carrying a dangerous weapon refuses to relinquish the weapon, the person shall be denied access to University facilities.  Nothing in this paragraph prevents the carrying of weapons for

1

the following reasons: (1) by authorized Peace Officers as defined and authorized by Wyoming Statutes; (2) by individuals directly transporting weapons to and from the weapons storage facility; or (3) pursuant to official University business and University-approved activities, including activities conducted by ROTC cadets under the direct and immediate supervision of ROTC faculty members, activities conducted by registered student organizations with the written permission of the Vice President for Student Affairs; and other University activities with the written permission of the responsible vice president. University students, faculty, and staff may be subject to disciplinary action for violation of this paragraph, up to and including termination. All persons violating this paragraph may also be subject to criminal sanctions in accordance with Wyoming law.

Mr. Williams refused to relinquish his weapon and refused to leave campus when asked. University Police cited him for misdemeanor criminal trespass under Wyo. Stat. Ann. § 6-3-303 (LexisNexis 2017).

[¶4]   Mr. Williams pleaded not guilty in Albany County circuit court. He argued "that he had a legal right to enter and remain on the University of Wyoming premises and that any order to vacate or depart said public premises pursuant to UW Regulation 2-178 [] was unlawful and unconstitutional." Mr. Williams requested a stay, which the circuit court granted, and Mr. Williams filed a complaint for declaratory judgment against UW in district court, seeking a declaration that: 1) "Wyoming Statute § 6-8-401 preempts UW Regulation 2-178 [] in so far as it relates to 'firearms' and 'ammunition'"; 2) "UW Regulation 2-178 [] is not lawful or enforceable in so far as it relates to 'firearms' and 'ammunition' as defined by W.S. § 6-8-403"; and 3) "UW Regulation 2-178 [] in so far as [it relates] to 'firearms' and 'ammunition' . . . is unconstitutional pursuant to the Federal and Wyoming Constitutions." He asserted that "A determination by the District Court that UW Regulation 2-178 as applied to 'firearms' and 'ammunition' is unlawful and unconstitutional will finally and completely resolve Mr. Williams' [circuit court] criminal prosecution."

[¶5]   The parties filed a joint stipulation of facts and cross-motions for summary judgment, and the district court granted summary judgment in favor of UW. Two of the district court's holdings are relevant to this decision. First, it held that the declaratory judgment action could be maintained in district court because Mr. Williams did not have "the ability to challenge the validity of UW Regulation 2-178 and/or Wyoming Statute § 6-8-401 in the Circuit Court." It initially held that Mr. Williams had standing to challenge "the legality of UW Regulation 2-178 vis-à-vis Wyoming Statute § 6-8-401" because the criminal trespass charge against Mr. Williams was a direct result of UW Regulation 2-178.

2

However, after concluding that the Wyoming Firearms Freedom Act, Wyo. Stat. Ann. §§ 6-8-401 through 6-8-406 (WFFA), did not preempt UW's regulation of firearms manufactured outside of Wyoming, it reconsidered whether Mr. Williams had standing. It reasoned that, since Mr. Williams' firearm was manufactured outside of Wyoming, the WFFA did not apply to him and, thus, that he did "not have a tangible interest that has been harmed." Nevertheless, the court concluded he retained standing to challenge UW Regulation 2-178 because of "the relaxed standing requirements" that apply in matters of great public importance.

## DISCUSSION

### I.      Mr. Williams has standing to challenge the legality of University of Wyoming Regulation 2-178 because of the pending criminal charge against him

[¶6]    In their joint stipulation of facts, the parties agreed there was "an existing, genuine and justiciable controversy before the Court" because of the criminal trespass charge against Mr. Williams. The district court held that, although Mr. Williams lacked standing because the WFFA only preempts regulation of firearms manufactured in Wyoming, "relaxed standing requirements [were] appropriate" because Mr. Williams had "raised a matter of great public importance."

[¶7]    Neither of the parties raised the issue of standing on appeal. However, because standing is a "vital jurisprudential" rule, a "court may still, and should, raise standing issues *sua sponte* when the parties do not." *In re L-MHB*, 2018 WY 140, ¶ 24, 431 P.3d 560, 568 (Wyo. 2018) (citing *Osborn v. Emporium Videos*, 848 P.2d 237, 241-42 (Wyo. 1993)); *see also Bird v. Lampert*, 2019 WY 56, ¶ 7, 441 P.3d 850, 854 (Wyo. 2019) ("Lack of standing may be raised at any time, including by the court *sua sponte*."). The existence of standing is a question of law we review de novo. *Id.* at ¶ 7, 441 P.3d at 853-54 (citing *In re L-MHB*, 2018 WY 140, ¶ 24, 431 P.3d at 568; *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 50, 226 P.3d 889, 911 (Wyo. 2010)). Thus, we afford no deference to the parties' stipulation that this case presented "an existing, genuine and justiciable controversy."

[¶8]    We adopted a four-part test for standing in *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974):

> First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or

3

decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them. Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution.

[¶9]   Here, Mr. Williams has an existing or genuine right at stake because of his pending criminal prosecution in circuit court. *See Heilig v. Wyo. Game & Fish Comm'n*, 2003 WY 27, ¶ 9, 64 P.3d 734, 738 (Wyo. 2003) (concluding appellant facing criminal charges in circuit court was "adversely affected in fact" by Game & Fish rules because he was criminally cited and prosecuted in circuit court for violating those rules and, thus, had standing in parallel declaratory judgment action). Further, a declaratory judgment from the district court "may effectively operate" on Mr. Williams' rights and affect his "rights, status or other legal relationships" because a declaration concerning the enforceability of UW Regulation 2-178 would directly affect the outcome of the pending circuit court charge. Finally, there is no doubt that these proceedings are genuinely adverse because "[i]t is clear from the briefing, both in the district court and on appeal, that the parties have advanced their positions 'with sufficient militancy to engender a thorough research and analysis of the major issues.'" *Allred v. Bebout*, 2018 WY 8, ¶ 54, 409 P.3d 260, 276 (Wyo. 2018) (quoting *Brimmer*, 521 P.2d at 578). This controversy satisfies the *Brimmer* test.

[¶10]  The district court mistakenly based its standing analysis on the question of whether the WFFA applies to Mr. Williams' firearm, which was not manufactured in Wyoming. But the injury in this case does not arise from the WFFA. Rather, it arises from Mr. Williams' criminal prosecution under Wyo. Stat. Ann. § 6-3-303 and the UW regulation. Although application of the WFFA was certainly relevant to the outcome of that prosecution, the district court's conclusion that the WFFA only applies to Wyoming-manufactured firearms did not divest Mr. Williams of standing. Instead, that conclusion concerned the merits of arguments advanced by the parties in an effort to resolve the underlying criminal charge. We find that Mr. Williams has standing to file his declaratory judgment action because he is adversely affected by the criminal charge against him and the underlying UW regulation, not, as the district court found, because he raises a matter of "great public importance." *See Allred*, 2018 WY 8, ¶¶ 40, 58, 409 P.3d at 271, 277 ("we have retreated from [] liberal application of the public interest factor . . . and continue to require parties to assert enough of a stake in the outcome to permit the judiciary to exercise jurisdiction over a case without exceeding its authority and violating separation of powers limitations.").

4

***II.*** ***The district court abused its discretion when it concluded that Mr. Williams'***
***declaratory judgment action served a useful purpose***

[¶11]  Despite the allure of weighing in on important constitutional and statutory issues, we are mindful of the principles of judicial restraint and the integrity of the judicial process. Mr. Williams sought a declaration that the WFFA preempted UW from regulating firearms and that the regulation was unconstitutional.  Nevertheless, the objective of the action was to obtain a judgment that would "finally and completely resolve Mr. Williams' criminal prosecution" in circuit court.  Neither the parties nor the district court provide any legitimate reason why that goal should be achieved by circumventing the criminal action in circuit court.

[¶12]  We review the district court's decision to stay or dismiss an action due to a pending proceeding under an abuse of discretion standard.  However,

> [t]he trial court's exercise of this discretion is subject to searching appellate review and is not given the same deference as is the trial court's exercise of discretion in other contexts. Independent review is justified because the exercise of the trial court's discretion in granting or denying declaratory relief is not dependent upon factors which are difficult for an appellate tribunal to review, such as, for example, factual determinations of credibility.

*Heilig*, 2003 WY 27, ¶ 8, 64 P.3d at 738 (quoting *Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1142 (Wyo. 1999)); *see also* 2 Walter H. Anderson, *Actions for Declaratory Judgments* § 382 Discretionary Power in Court to Adopt Declaratory Procedure, § 383 Discretionary Power of the Court in Granting Relief Generally, and § 388 Discretion of Court When Controversy Not Terminated and Useful Purpose Not Served (2d ed. 1951).

[¶13]  We considered strikingly similar circumstances in *Heilig*, 2003 WY 27, 64 P.3d 734.  There, Game & Fish had created a program that made "hunting on private lands available to the public through agreements with private landowners." *Id.* at ¶ 3, 64 P.3d at 735.  The Game & Fish rules governing the program "set out the allowed species, time, and location of hunting." *Id.* at ¶ 9, 64 P.3d at 738.  Mr. Heilig was prosecuted in circuit court under Wyo. Stat. Ann. § 23-3-305(b), which criminalizes hunting on private property without permission, because he had allegedly been "hunting an unauthorized species under the program rules." *Id.* at ¶¶ 4, 9 64 P.3d at 736, 738.  Mr. Heilig filed a motion to dismiss the criminal action, arguing that the Game & Fish rules "were void because they were improperly promulgated and were unconstitutional." *Id.* at ¶ 5, 64 P.3d at 736.  The circuit court denied the motion, and Mr. Heilig appealed to the district court. *Id.*  While the appeal

5

was pending, Mr. Heilig filed an action for declaratory judgment in another district court, seeking a declaration that Game & Fish's rules were "null and void, unenforceable, invalid *ab initio*, and unconstitutional." *Id.* at ¶ 7, 64 P.3d at 737. The district court dismissed the declaratory judgment action, reasoning that Mr. Heilig lacked standing. *Id.* at ¶ 8, 64 P.3d at 737.

[¶14] On appeal, we held that "dismissal was proper but on different grounds." *Id.* We concluded Mr. Heilig had standing because he "was affected in fact by Game and Fish's rules" in that he was criminally cited for hunting a species that was not authorized under the rules. *Id.* at ¶ 9, 64 P.3d at 738. However, we affirmed the district court's dismissal of the declaratory judgment action because we found it did not serve a useful purpose. *Id.* at ¶¶ 10, 11, 64 P.3d at 738-39. First, we restated "the circumstances under which a declaratory judgment action should be dismissed when another similar proceeding is pending." *Id.* at ¶ 10, 64 P.3d at 738. Those circumstances include:

> 1.      The declaratory judgment action was intended to be used to force the other party to have a dress rehearsal of an issue to be tried in the main case
>
> 2.      The holding in the declaratory judgment action might inappropriately collaterally estop the parties to the main action as to certain factual issues
>
> 3.      Such a proceeding would unduly burden the opposing party and improperly allow control of the litigation to be wrested from the initiator of the original action
>
> 4.      Such a declaratory judgment would violate the principle of judicial economy
>
> 5.      Such an action would constitute an unwarranted interference with another court's proceedings.

*Id.* (alterations and quotation marks omitted) (quoting *Morris v. Farmers Ins. Exch.*, 771 P.2d 1206, 1211 (Wyo. 1989)). We then compared the pending criminal case and the declaratory judgment action and found "no other purpose for the declaratory judgment action than as a 'dress rehearsal' for the criminal case or to obtain a final judgment from a different forum which would bind the first court." *Heilig*, 2003 WY 27, ¶ 11, 64 P.3d at 739. We found that a final judgment in the declaratory judgment action "would at least arguably collaterally estop the parties in the main action from litigating the same issues," "take control of the proceedings from the prosecution in the [] criminal case because neither the prosecutor nor [the county] was a party to the [district court] declaratory judgment action," and that asking two courts to address the same issues violated principles of judicial

economy and was an unwarranted interference with the proceedings originating in the circuit court. *Id.* Thus, we affirmed dismissal of the declaratory judgment action. *See also Sandoval v. State ex rel. Wyo. Dep't of Transp.*, 2012 WY 160, ¶¶ 16-23, 291 P.3d 290, 295-97 (Wyo. 2012) (finding *Heilig* "to be directly on point" where a "declaratory judgment action . . . was filed while the criminal actions were still pending" and affirming its dismissal).

[¶15]   Here, the district court acknowledged *Heilig* but concluded it was distinguishable, saying:

> Mr. Williams was cited for a violation of Wyoming Statute § 6-3-303 (criminal trespass), not for a violation of either the UW Regulation or the Wyoming statute at issue in these declaratory judgment proceedings.
>
> Thus, while Mr. Williams' alleged violation of UW 2-178 served as the underlying basis for his request to depart University property, the substantive issue before the Circuit Court is whether Mr. Williams remained on University property after being notified to depart.  That criminal law issue is independent of the underlying validity of UW Regulation 2-178 and/or Wyoming Statute § 6-8-401.  This Court, then, does not and cannot conclude that Mr. Williams has, as an available avenue of relief, the ability to challenge the validity of UW Regulation 2-178 and/or Wyoming Statute § 6-8-401 in the Circuit Court.
>
> Under these circumstances, this declaratory judgment action serves a useful purpose of public import.  It is not a "dress rehearsal" for the Circuit Court proceedings, nor will it collaterally estop the parties to the criminal proceedings from proceeding as they deem appropriate.  Finally, this Court concludes that this declaratory judgment proceeding will maintain the integrity and efficiency of the judicial system, discourage redundant actions, and minimize their attendant problems.   On these grounds, dismissal would be inappropriate.

(Footnote omitted.)

[¶16]  We disagree with the district court's reasoning and conclusion.   First, that "Mr. Williams was cited for a violation of Wyoming Statute § 6-3-303 (criminal trespass), not for a violation of either the UW Regulation or [the WFFA]" is not distinct from *Heilig*.

There, Mr. Heilig was prosecuted in circuit court under a Wyoming statute that criminalized unauthorized hunting on another's land without permission. *Heilig*, 2003 WY 27, ¶ 4, 64 P.3d at 736. Meanwhile, his declaratory judgment action challenged the legality of Game & Fish rules on grounds that they violated the Wyoming Administrative Procedure Act and the Wyoming and United States Constitutions. *Id.* at ¶ 6, 64 P.3d at 737. In other words, Mr. Heilig did not directly challenge the statute under which he was charged in his declaratory judgment action. Instead, he sought to establish that other statutes and constitutional provisions rendered the regulation he had violated unenforceable, exactly as Mr. Williams does here.

[¶17] Second, the "criminal law issue" before the circuit court is not "independent of the underlying validity of UW Regulation 2-178 and/or [the WFFA]." The district court itself acknowledged that "the criminal trespass charge currently pending against Mr. Williams is a direct result of the University's adoption and enforcement of UW Regulation 2-178." Mr. Williams intended to defend against his criminal charge (and still does) "on the basis that he had a legal right to enter and remain on the University of Wyoming premises and that any order to vacate or depart said public premises pursuant to UW Regulation 2-178 [] was unlawful and unconstitutional." Indeed, he acknowledges that the circuit court proceeding is stayed until this Court issues a decision and that a decision on the issues he presents will be dispositive of those proceedings. If, as the dissent suggests, the circuit court trespass action would proceed regardless of the outcome of the district court action, there would have been no reason for the stay in circuit court (and Mr. Williams' standing would be in doubt). The dissent relies on *Cleveland v. Dickerson*, 60 N.E.3d 686 (Ohio Ct. App. 2016) for the proposition that "[t]he crime of criminal trespass is complete once the defendant is asked to leave and refuses," yet omits its language emphasizing:

> that our holding does not stand for the proposition that a criminal trespass conviction will always be upheld once the general privilege to enter public property is revoked and the defendant refuses to leave. For example, there are circumstances where a criminal trespass may be inappropriate where, subject to certain time, place, and manner of use restrictions, the defendant is lawfully exercising his or her First Amendment rights to free speech and peaceful assembly. However, the facts of this case do not support a finding that appellants were exercising a constitutional right at the time they were asked to leave the airport.

*Id.* at ¶ 28, 60 N.E.3d at 692.

[¶18] The exception identified above describes the scenario presented in this case, where Mr. Williams seeks to challenge the constitutionality of the UW regulation underlying his

trespass charge. *See also State v. Pentico*, 265 P.3d 519, 527 (Idaho Ct. App. 2011), also cited by the dissent, acknowledging the same exception.

[¶19] Criminal defendants are entitled to present defenses to the charges against them. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) ("[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"). There is no reason the circuit court could not have decided the merits of Mr. Williams' defense that UW police had no authority to ask him to leave the UW campus. That decision would necessarily address "the underlying validity of UW Regulation 2-178 and/or [the WFFA]." *See also Ostrander v. Linn*, 22 N.W.2d 223, 226 (Iowa 1946) (concluding identical issues were presented in criminal action and declaratory judgment action because "[t]he basis for declaratory judgment relief [] would be the basis for the defense in the criminal action").

[¶20] Mr. Williams' declaratory judgment action is indeed an inappropriate "dress rehearsal" in that the district court issued a decision on "an issue to be tried in the main case." *Heilig*, 2003 WY 27, ¶ 10, 64 P.3d at 738. Further, the parties' factual stipulations in the declaratory judgment action will likely collaterally estop the parties to the criminal case from relitigating those factual issues in circuit court. *See id.* And, just as in *Heilig*, Mr. Williams' declaratory judgment action improperly wrested control of the litigation "from the prosecution in the [] criminal case because neither the prosecutor nor [the county] was a party to the [district court] declaratory judgment action." *Id.* at ¶ 11, 64 P.3d at 739. We find no support for the district court's conclusion "that this declaratory judgment proceeding will maintain the integrity and efficiency of the judicial system, discourage redundant actions, and minimize their attendant problems."

[¶21] Further, forum shopping is the antithesis of judicial economy. The parties in this case may simply have attempted to "transfer the litigation to a strategically superior forum." *Southwestern Pub. Serv. Co.*, 978 P.2d at 1146. Appeals from circuit courts are taken "to the district courts and thereafter to the Wyoming supreme court only if the supreme court grants a writ of certiorari agreeing to hear the appeal." Wyo. Stat. Ann. § 5-2-119 (LexisNexis 2017); *see also* W.R.A.P. 6.01(c) ("A district court shall have jurisdiction of appeals from . . . circuit courts."); W.R.A.P. 13.01 ("Granting of a petition is within the discretion of the supreme court."). Meanwhile, final appealable orders from district courts are appealed directly to this Court, with no need for us to "agree[] to hear the appeal." Wyo. Stat. Ann. § 5-2-119. *See* Wyo. Const. art. 5, § 18 ("Writs of error and appeals may be allowed from the decisions of the district courts to the supreme court under such regulations as may be prescribed by law."); W.R.A.P. 12.11(a) ("An aggrieved party may obtain review of any final judgment of the district court by appeal to the supreme court"). Courts may certify questions of law to a reviewing court, W.R.A.P. 11, and perhaps the district court declaratory judgment action was a backdoor way of ensuring that this Court would answer the questions Mr. Williams presents in his declaratory judgment action. However, "an unwarranted interference with another court's proceedings [] will

9

not be approved in Wyoming," and "we will not characterize [] utilization of [one court] to usurp the jurisdiction of [another court] as 'judicial efficiency.'"[1]  *See Southwestern Pub. Serv. Co.*, 978 P.2d at 1146.  If this Court proceeded to the merits of this case, we would be doing just that.

[¶22]  That is why we decide this case on an issue neither of the parties raised.  "As a general principle, issues not raised or briefed should not be considered by this Court."  *Rodriguez v. State*, 2019 WY 25, ¶ 46, 435 P.3d 399, 413 (Wyo. 2019) (Burke J., concurring in part and dissenting in part).  However, "there are exceptions to the general rule."  *Id.* at ¶ 49, 435 P.3d at 413.  "We have justified decisions on issues not raised to protect the integrity of the judicial process."  *Id.* (citing *Allen v. Allen*, 550 P.2d 1137, 1142 (Wyo. 1976)).  Thus,

> [w]e are not a bit concerned that the matter [] was not raised . . . by either of the parties.  This court has general superintending control over all the courts of the state and the Wyoming judicial system in general.  It is our duty to protect its integrity and prohibit dealing lightly with its proceedings.  We are at liberty to decide a case upon any point which in our opinion the ends of justice require, particularly on a point so fundamental that we must take cognizance of it.

*Allen*, 550 P.2d at 1142 (footnotes omitted).  We find it necessary to address this issue to protect the integrity of the judicial process.

[¶23]  The issue here, as in *Heilig*, 2003 WY 27, ¶ 8, 64 P.3d at 738, "is not dependent upon factors which are difficult for an appellate tribunal to review."  *See Rodriguez*, 2019 WY 25, ¶ 23 n.3, 435 P.3d at 405 n.3 (explaining that the Court would address an issue not directly raised by the parties because the record was sufficient to do so and the issue presented a "quintessentially legal undertaking").  "[T]he discretion exercised by the courts in taking or declining jurisdiction in declaratory actions . . . is controlled in a great measure by legal principles."  2 Anderson, *supra* § 390, at 940; *Id.* at § 390, at 942-43 ("[T]he declaratory act may not be exercised or denied at any whim of a trial court . . . [and] such discretion is subject to review at the hands of appellate tribunals.").  Further, this is not a

---

[1] The dissent suggests it is inefficient for this Court to instruct the district court to dismiss the declaratory judgment action at this stage of the proceedings.  Evaluated from the time of the district court's decision, however, dismissal of the action clearly would have served that interest because it would have avoided these duplicative actions.  In any event, even if this Court proceeds to the merits of this dispute, ultimate resolution of Mr. Williams' injury will require a decision from the circuit court.  Thus, no matter how we decide this case, it must go back to circuit court (illustrating one of the problems with maintaining the declaratory judgment action in the first instance).  Our interest in protecting the integrity of the judicial system outweighs the concern of efficiency in this case and preserves the interest of efficiency in future cases.

case where the lower court and the parties were entirely unaware of the issue. The district court addressed the issue, albeit incorrectly, in its order. We will not ignore our precedent simply because the parties in this case chose to do so. *Compare Rodriguez*, 2019 WY 25, ¶ 50, 435 P.3d at 414 (suggesting it is appropriate for this Court to consider unraised issues "where the Court is simply applying clear precedent that has been ignored by the parties to the undisputed facts of a case").

[¶24] *Heilig* is directly on point and the district court's attempt to distinguish it is unpersuasive. Other sources confirm that a court generally should not enter declaratory relief when another action is pending that could dispose of all the issues in the case. The Uniform Declaratory Judgments Act permits courts to "declare rights, status and other legal relations whether or not further relief is or could be claimed." Wyo. Stat. Ann. § 1-37-102 (LexisNexis 2017). We have held that "the existence of another adequate remedy will not, of itself, preclude declaratory judgment relief." *Rocky Mountain Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1167-68 (Wyo. 1982). However, "there must be a justiciable controversy, and the procedure cannot be used to secure an advisory opinion." *Id.* at 1168. Further, declaratory relief should not be entered when it will not serve a useful purpose and will not "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Edwin Borchard, *Declaratory Judgments* ch. 5, at 299 (2d ed. 1941); 2 Anderson, *supra* § 388, at 937-38; *Heilig*, 2003 WY 27, ¶¶ 10-12, 64 P.3d at 738-39 (affirming dismissal of declaratory judgment action for failure to serve useful purpose); *Beatty v. Chicago, B. & Q.R. Co.*, 52 P.2d 404, 408 (Wyo. 1935) ("There is no reason to bring an action for a declaratory judgment unless some good purpose will be subserved thereby.").

[¶25] The issues of whether a declaratory judgment action presents a justiciable controversy and whether it serves a useful purpose are distinct. *See Heilig*, 2003 WY 27, ¶ 9, 64 P.3d at 738 (holding Mr. Heilig had standing because he was in fact affected by Game & Fish rules but that the declaratory judgment action did not serve a useful purpose). As discussed, Mr. Williams' declaratory judgment action presents a justiciable controversy.[2] However, even when an action for declaratory judgment presents a justiciable controversy, it does not necessarily serve a useful purpose. Courts have found that declaratory judgment actions do not serve useful purposes:

---

[2] Because "a declaration that . . . UW Regulation 2-178 . . . is unlawful and unconstitutional will finally and completely resolve Mr. Williams' criminal prosecution" it would not constitute an advisory opinion. "[T]he essential difference between a declaratory judgment and an advisory opinion or decision . . . is that the former is binding and the adjudication is of present rights, whereas the latter is merely the opinion of the judges or the court, which is binding on no one. The former may be pleaded as res judicata, while [the] latter would not sustain such [a] plea." 1 Anderson, *supra* § 11, at 53. A declaration from the district court that UW Regulation 2-178 is unlawful would be binding on the circuit court in Mr. Williams' criminal prosecution.

> where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither useful nor proper to issue the declaration.

Borchard, *supra* at 302, n.53 (collecting cases). Although the existence of another remedy is not a bar to a declaratory judgment action, Wyo. Stat. Ann. § 1-37-102 ("Courts . . . may declare rights, status and other legal relations whether or not further relief is or could be claimed."), pendency of another action determining identical issues generally deprives the action of a useful purpose:

> As a general rule it may be stated that a declaratory action will not be entertained, where another remedy is available and applicable, provided an action seeking to invoke the same is already pending when the action for a declaration of rights is filed, and in such case it is the duty of the court in the subsequently filed declaratory judgment action to proceed no further than may be necessary to protect the rights of the parties, and if no necessity therefor exists, then the declaratory action should be dismissed. A court cannot declare rights as to matters involved in a prior pending action. This is true because decisions and declarations must be made in the first instance by the court whose power is invoked and which is competent to decide the same.

1 Anderson, *supra* § 209, at 443 (citing, *inter alia*, *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321 (4th Cir. 1937); *Ostrander v. Linn*, 22 N.W.2d 223 (1946)).

[¶26]  In *Aetna*, Mrs. Quarles was injured while riding in a vehicle insured under a policy held by her husband. 92 F.2d at 323. She brought an action for damages against him in state court, and Aetna filed an action for declaratory judgment in district court against Mr. and Mrs. Quarles, seeking a declaration that the company was not bound to defend the action for damages or pay any judgment that might be recovered and that the state court action was "collusive." *Id.* Meanwhile, Mrs. Quarles recovered damages in her state court action against Mr. Quarles and brought suit against Aetna to recover the amount of the judgment under a provision of the insurance policy. *Id.* On appeal, the Fourth Circuit affirmed dismissal of the declaratory judgment action because it was "merely for the purpose of determining the validity of a defense which the company was asserting in the action against it and which could be equally well determined in that action." *Id.* at 325. The court reasoned that the purpose of the Uniform Declaratory Judgment Act is to "afford a new form of relief where needed, not to furnish a new choice of tribunals, . . . try a

controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Id.* at 324-25.

[¶27] In *Ostrander*, an inspector for the State Department of Agriculture filed an information before a justice of the peace charging a cream station operator with violating various sections of Iowa's agricultural code. 22 N.W.2d at 224. The cream station operator filed a declaratory judgment action asserting that its operations neither came "within the contemplation" of the statutes nor violated them. *Id.* at 225. The court in the declaratory judgment action entered a decree determining the "plaintiff's rights, status and legal relations" under the statutes, and the defendant appealed, arguing the action should have been dismissed because of the pending criminal proceeding. *Id.* at 226. On appeal, the court acknowledged that courts should not exercise their discretion to enter declaratory relief "for the purpose of trying issues involved in cases already pending, especially where they can be tried with equal facility in such cases, or for the purpose of anticipating the trial of an issue in a court of co-ordinate jurisdiction." *Id.* at 227 (emphasis omitted). The court concluded, however, that this was not a case where the issues could be "tried with equal facility" because the petty criminal offense was presented to a justice of the peace. *Id.* at 228. In Iowa, justices of the peace are usually "a layman" and only have jurisdiction of offenses involving a fine of not more than $100 or not more than 30 days imprisonment. *Id.* at 229. Trials conducted by justices of the peace "are summary," and the Iowa Supreme Court had previously held that justices of the peace have no power to instruct a jury or to direct a verdict. *Id.* at 228-29. Emphasizing that the issue it was considering was "very narrow," the court held:

> the parties herein would not be able to procure a full and immediate adjudication of the complicated legal questions that determine their rights and duties inter sese in the pending criminal proceedings before the justice of the peace; the issues in the pending criminal proceedings could not be tried and determined with equal facility; the trial before the justice of the peace would not necessarily determine the controversy between the parties; the entry of the declaratory judgment herein, determining plaintiff's rights, status and legal relations with defendant under Sections 3100.23, 3100.24, 3100.25, Code 1939, served a definite, useful purpose; the court did not abuse its discretion in assuming jurisdiction to enter such declaratory judgment.

*Id.* at 229. Thus, the court adhered to the rule that a court should not enter declaratory relief where another action is already pending that could determine all issues raised in the declaratory judgment action, but found it inapplicable in the circumstances because the criminal proceedings at issue did not offer the same opportunity to try the "complicated legal questions" raised in the plaintiff's petition for declaratory relief. *Id.* at 228-29.

13

[¶28] In contrast, circuit court judges in Wyoming are not "laymen," have original jurisdiction over misdemeanor criminal cases, and are fully competent to decide "complicated legal questions." Wyo. Stat. Ann. § 5-9-111(a)(ii) (LexisNexis 2017) ("To be eligible for appointment to the office of judge of a circuit court, a person shall be . . . [a]uthorized to practice law in Wyoming."); Wyo. Stat. Ann. § 5-9-129 ("Circuit courts have original jurisdiction in all misdemeanor criminal cases."); *see generally Howard v. Aspen Way Enterprises, Inc.*, 2017 WY 152, 406 P.3d 1271 (Wyo. 2017) (reviewing circuit court's entry of summary judgment on privacy and breach of covenant of good faith and fair dealing claims). Thus, the circumstances presented here fall well within the general rule that a declaratory judgment action should not be entertained if, at the time the declaratory judgment action is initiated, another action is pending that could determine all issues raised in the declaratory judgment action. *See also* 1 Anderson, *supra* § 210, at 457 ("The declaratory action will be entertained, *unless it appears that the issues presented in the declaratory action may be fully, completely and effectually adjudicated in the criminal proceeding*.") (emphasis added); *Id.* at § 243, at 556 (saying the general rule is "that what will constitute a sufficient defense, either in the declaratory judgment action itself or in another suit or action, cannot properly be made the subject of a declaratory judgment action"); 2 Anderson, *supra* § 383, at 931 ("where another action between the same parties in which all of the issues could be determined is pending at the time of the initiation of the declaratory action, the court abuses its discretion when it entertains the action for a declaration of rights"); *Id.* at § 395, at 957 ("The discretion to grant a declaratory judgment ought not to be exercised where its only effect would be to decide matters which could be better decided in the criminal courts of the state in pending actions involving identical questions as to which a declaration is asked.").

[¶29] We hold the district court abused its discretion in concluding that this declaratory judgment action served a useful purpose and entering declaratory relief. Accordingly, we reverse with instructions to dismiss.

**KAUTZ, J.**, dissenting, in which **DAVIS, C.J.**, joins.

[¶30]   I respectfully dissent.

[¶31]   The majority concludes *Heilig v. Wyoming Game & Fish Comm'n,* 2003 WY 27, 64 P.3d 734 (Wyo. 2003), is directly on point and governs our decision in this case. I conclude otherwise. First, application of the rules expressed in *Heilig* does not indicate that Mr. Williams' declaratory relief action is improper. Second, *Heilig* is not directly on point.

[¶32]   I agree with the majority that the general requirements for a justiciable controversy, as expressed in *Brimmer v. Thomson,* 521 P.2d 574, 576-77 (Wyo. 1974), exist in this case. *Heilig,* using *Morris v. Farmers Ins. Exch.*, 771 P.2d 1206, 1211 (Wyo. 1989), provides an additional justiciability test to determine whether it is appropriate to conduct a separate declaratory relief action while another related proceeding is pending. Those factors do not indicate that Mr. Williams' declaratory relief action is improper.

[¶33]   The first factor considers whether "[t]he declaratory judgment action was intended to be used to force the other party to have a dress rehearsal of an issue to be tried in the main case[.]" *Heilig*, ¶ 10, 64 P.3d at 737. The majority opinion is based entirely on the premise that a determination of the validity of UW Regulation 2-178 will be determinative of the criminal trespass action. In other words, if the regulation is invalid, for whatever reason, the criminal prosecution cannot continue. However, the criminal trespass case against Mr. Williams may not necessarily be determined by resolution of that question. Wyo. Stat. Ann. § 6-3-303(a) (LexisNexis 2017) states: "A person is guilty of criminal trespass if he . . . remains on or in the land or premises of another person . . . after being notified to depart[.]" There is nothing in the plain language of the statute requiring the landowner to have a valid reason for asking the person to leave. Instead, a criminal trespass is complete when a person remains on the property of another after being told to depart. The reason the UW police told Mr. Williams to depart may be immaterial. *See, e.g.*, *Cleveland v. Dickerson,* 60 N.E.3d 686 (Ohio Ct. App. 2016) (criminal trespass is complete once the defendant is asked to leave and refuses; there is no requirement for a public landowner to give a reason for asking a person to leave); *State v. Pentico,* 265 P.3d 519 (Idaho Ct. App. 2012) (same). In other words, a ruling that the regulation is invalid may not be a defense to trespass, and the circuit court will not necessarily have to determine if the regulation is valid.[3]   The majority properly points out that the exercise of a constitutional right may be a defense to trespass but ignores that the validity of the regulation is not necessarily dependent on constitutional claims.

---

[3] Whether the validity of a landowner's or the State's reason for asking a defendant to leave is an element of trespass under § 6-3-303 has not been determined.

15

[¶34] Further, unlike in *Heilig,* the circuit court has not decided whether Mr. Williams' claim that the regulation is invalid constitutes a defense. The circuit court stayed its proceedings, awaiting a decision from the district court and this Court.

[¶35] The second factor considers whether "[t]he holding in the declaratory judgment action might inappropriately collaterally estop the parties to the main action as to certain factual issues[.]" *Heilig,* ¶ 10, 64 P.3d at 738. This factor, and similarly the first factor, assumes that the criminal case is the "main" action involved in the proceeding. The circumstances here indicate otherwise. The issues in the declaratory relief action are certainly the "main" issues to both Mr. Williams and to the University of Wyoming Board of Trustees. In *Morris* and *Heilig,* the underlying cases, not the declaratory judgment actions, were the primary concern for the parties and contained all the disputed issues. This factor supports maintenance of the declaratory relief action because it truly is the "main" case. Further, this factor considers whether any factual collateral estoppel resulting from the declaratory judgment case would be applied to the criminal case "inappropriately." A determination by the district court and/or this Court that the UW regulation is or is not valid is not a factual determination, but instead a legal one. Our decision on that issue would not "inappropriately" impinge on fact-finding in the criminal trespass case. Although Mr. Williams' declaratory relief action raises other factual issues, such as whether he was on "campus" and whether the location of this incident was a "sensitive area," those determinations by the district court, and this Court's decision about them on review of the record, would not "inappropriately" interfere with the circuit court. To the contrary, those facts are more appropriately determined in the declaratory relief action where the University Board of Trustees directly participates. Of course, the Board does not participate in the criminal trespass case.

[¶36] The third factor is whether "[s]uch a proceeding would unduly burden the opposing party and improperly allow control of the litigation to be wrested from the initiator of the original action[.]" *Id.* I see no undue burden on the State or the Board of Trustees from Mr. Williams' declaratory relief action. To the contrary, the majority places an undue burden on the county prosecutor in the trespass case by requiring that office to represent and defend the interests of the University Board of Trustees. To me, the proper control of this litigation results by proceeding with the declaratory relief action.

[¶37] The fourth part of the *Heilig/Morris* test is whether "[s]uch a declaratory judgment would violate the principle of judicial economy[.]" *Id.* It is clear to me that judicial economy is served by this Court addressing the issues presented in the declaratory relief action now. The majority's approach does not serve judicial economy—it requires the circuit court to consider all the issues already decided by the district court, plus any others solely related to the criminal case. Then, if the circuit court rules against Mr. Williams, he would have to appeal to the district court, and assuming the district court ruled consistently with its ruling in the declaratory relief case, apply for a writ of review to this Court. On

16

the other hand, if the circuit court found the UW regulation invalid, the State would have to apply for a writ to have the district court and this Court review the matter.

[¶38]  The majority claims it is promoting judicial economy and protecting the integrity of the judicial system.  I disagree.  The majority refuses to recognize that this is a case about the University's authority to regulate firearms, and not about a trespass.  The majority is forcing litigation of a collateral matter in the criminal case, thereby omitting participation of a key party – the University.  The integrity of the judicial system is not served by avoiding the issue and forcing additional litigation.

[¶39]  The last factor is whether the declaratory relief action "would constitute an unwarranted interference with another court's proceedings."  *Id.*  The circuit court stayed the trespass case, but it was not required to do so.  There is no indication that the declaratory relief case is "unwarranted" or interferes with the criminal trespass prosecution.  Some of Mr. Williams' claims in the declaratory relief case may have no relevance to the criminal case.  Others are best decided in litigation involving the Board of Trustees, and appropriately decided by this Court.

[¶40]  I conclude each of *Heilig/Morris* factors supports resolution of Mr. Morris' declaratory relief case.  However, I do not believe either *Heilig* or *Morris* is directly on point here, because in each of those cases the declaratory relief action clearly was an attempt to circumvent another case and added another layer of legal action to the mix.  That is not true in this case.

[¶41]  In *Heilig,* the Department of Game and Fish promulgated rules governing agreements with private land owners to allow limited hunting, etc. on their properties.  Under those rules, a landowner granted limited permission for hunting some game, but not pheasants.  Mr. Heilig hunted pheasants on that landowner's property and was charged with hunting on another's property without permission.  He was not charged with trespass.  Mr. Heilig sought dismissal of the criminal action on the grounds that the Game and Fish had, among other things, violated the Wyoming Administrative Procedures Act when it promulgated the relevant rules.  After the circuit court denied his motion to dismiss, he entered a conditional guilty plea and appealed the denial of his motion to dismiss to the Fifth Judicial District Court.  *Heilig,* ¶¶ 4-5, 64 P.3d at 736.  While his appeal was pending, Mr. Heilig filed a declaratory judgment action in the Ninth Judicial District Court seeking a declaration that the Game and Fish regulations were promulgated improperly and challenging the constitutionality of the criminal prosecution.  *Id.* at ¶¶ 5-6, 64 P.3d at 736-37.  The Ninth Judicial District Court dismissed his declaratory judgment action, and he appealed to this Court.  We upheld that decision, concluding the declaratory judgment action would not serve a useful purpose because Mr. Heilig's goal was to circumvent the criminal case and dismissal of his declaratory judgment case was necessary "to maintain the integrity of the judicial system, discourage redundant actions, and minimize their attendant problems."  *Id.* at ¶¶ 12-13, 64 P.3d at 739.  Here, it is obvious to me that Mr.

Williams' goal is not to circumvent the criminal trespass case, but instead to challenge the validity of the University's firearms regulation. It is equally obvious that the declaratory relief action is the most expeditious method of resolving the issues and does not frustrate judicial economy.

[¶42] Unlike in this case, the circuit court had actually ruled on Mr. Heilig's claim that the regulations were invalid and the case had proceeded to judgment. It was, therefore, clear that the invalidity of the Game and Fish regulations was at the heart of Mr. Heilig's defense to the criminal case. As I explained above, that is not so clear in this case.[4]

[¶43] In *Morris,* an insurer brought an action seeking a declaration as to whether there was insurance coverage for injuries/damages sought in a corresponding personal injury action. Both actions were apparently in the same district court. The insurer claimed there was no coverage, asserting the potential insured's actions were intentional. *Id.* at 1207-08. Because that exact question would be decided in the personal injury action, this Court held the district court erred by entering a declaratory judgment. *Id.* at 1212. In *Morris* the declaratory relief action added a layer of litigation which attempted to control the already pending case. The personal injury case would have resolved all the issues raised in the declaratory relief action. That is not the circumstance here.

[¶44] I cannot agree that the majority's decision promotes judicial economy or demonstrates necessary judicial restraint. It simply avoids the primary issue and forces additional unnecessary litigation. This Court should consider Mr. Williams' claims on their merits at some point. I see no reason that should not happen now.

---

[4] One must question whether invalidity of the Game and Fish regulations about walk-in areas could have been a defense to Mr. Heilig. Even if the regulations were invalidly adopted, he still would not have had permission to hunt pheasants. Nevertheless, the circuit court denied Mr. Heilig's motion to dismiss the criminal charges, and Mr. Heilig entered a conditional guilty plea.